IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
NORTHERN DIVISION
No. 2:20-CV-83-D

| | |
|---|---|
| JONATHAN FISCHMAN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) **ORDER** |
| v. | ) |
| | ) |
| MEDIASTRATX, LLC, | ) |
| | ) |
| Defendant. | ) |

On November 25, 2020, Jonathan Fischman ("Fischman" or "plaintiff") filed a complaint against MediaStratX, LLC ("MediaStratX" or "defendant") alleging violations of the Telephone Consumer Protection Act of 1991, 47 U.S.C. § 227 ("TCPA"), and 47 C.F.R. § 64.1200(d) [D.E. 1]. Fischman also seeks class certification. See id. On January 29, 2021, MediaStratX answered [D.E. 7]. On March 17, 2021, MediaStratX moved for judgment on the pleadings [D.E. 11] and filed a memorandum and document in support [D.E. 12]. On April 7, 2021, Fischman responded in opposition to MediaStratX's motion [D.E. 16]. On April 21, 2021, MediaStratX replied [D.E. 17]. As explained below, the court denies MediaStratX's motion.

I.

Fischman is a resident of Elizabeth City, North Carolina. See Compl. [D.E. 1] ¶ 1. MediaStratX is a Nevada limited liability company headquartered in Santa Ana, California. See id. ¶ 2. MediaStratX runs telemarketing campaigns selling vehicle warranties throughout the United States. See id. ¶ 17.

On December 19, 2004, Fischman registered his personal cell phone number on the TCPA's Do-Not-Call registry. See id. ¶¶ 31–32. Beginning in late 2018, Fischman began receiving unsolicited calls to his personal cell phone about purchasing extended vehicle warranties. See id. ¶ 34. The calls came from various numbers. See id. ¶¶ 34–45. In late 2018, Fischman asked the callers to cease calling him about purchasing an extended vehicle warranty. See id. ¶¶ 34–35. Nonetheless, the calls continued through January 30, 2019. See id. ¶ 43. Fischman received over 25 calls about purchasing an extended vehicle warranty. See id. ¶ 45.

Fischman repeatedly attempted to return the calls to identify the company responsible for them but found that the majority of numbers were no longer in service. See id. ¶ 36. On January 10, 2019, Fischman returned one of the calls and determined that the number was associated with an affiliate of MediaStratX. See id. ¶ 40. Fischman again asked the agent to stop calling him. See id. ¶ 37. Nonetheless, Fischman received at least nine more calls between January 10, 2019, and January 30, 2019. See id. ¶¶ 37–43.

On November 25, 2020, Fischman filed suit against MediaStratX alleging violations of the TCPA and related regulations. See id. ¶¶ 54–70. MediaStratX now seeks judgment on the pleadings. See [D.E. 11]. As part of its motion, MediaStratX filed a declaration from Erik Rameson ("Rameson"), a MediaStratX principal. See [D.E. 12-1]. In his declaration, Rameson claims that MediaStratX had no records of calling Fischman (1) before January 10, 2019, (2) on January 14, 2019, or (3) from the multiple numbers Fischman listed in his complaint. See id. ¶¶ 5–9. Fischman opposes MediaStratX's motion. See [D.E. 16].

II.

A party may move for judgment on the pleadings at any time "[a]fter the pleadings are closed—but early enough not to delay trial." Fed. R. Civ. P. 12(c). A court should grant the motion

2

if "the moving party has clearly established that no material issue of fact remains to be resolved and the party is entitled to judgment as a matter of law." Park Univ. Enters. v. Am. Cas. Co. of Reading, 442 F.3d 1239, 1244 (10th Cir. 2006) (quotation omitted), abrogated on other grounds by Magnus, Inc. v. Diamond State Ins. Co., 545 F. App'x 750 (10th Cir. 2013) (unpublished); see Mayfield v. Nat'l Ass'n for Stock Car Auto Racing, Inc., 674 F.3d 369, 375 (4th Cir. 2012); Burbach Broad. Co. of Del. v. Elkins Radio Corp., 278 F.3d 401, 405–06 (4th Cir. 2002). A court may consider the pleadings and any materials referenced in or attached to the pleadings, which are incorporated by reference. See Fed. R. Civ. P. 10(c); Fayetteville Invs. v. Com. Builders, Inc., 936 F.2d 1462, 1465 (4th Cir. 1991). A court also may consider "matters of which a court may take judicial notice." Tellabs, Inc. v. Makor Issues & Rts., Ltd., 551 U.S. 308, 322 (2007).

The same standard applies under Rule 12(c) and Rule 12(b)(6). See Mayfield, 674 F.3d at 375; Burbach Broad. Co., 278 F.3d at 405–06. A motion under Rule 12(c) tests the legal and factual sufficiency of the claim. See, e.g., Ashcroft v. Iqbal, 556 U.S. 662, 677–80, 684 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 554–63 (2007); Coleman v. Md. Court of Appeals, 626 F.3d 187, 190 (4th Cir. 2010), aff'd, 566 U.S. 30 (2012); Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008). To withstand a Rule 12(c) motion, a pleading "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Iqbal, 556 U.S. at 678 (quotation omitted); see Twombly, 550 U.S. at 570; Giarratano, 521 F.3d at 302. In considering the motion, the court must construe the facts and reasonable inferences in the "light most favorable to the [nonmoving party]." Massey v. Ojaniit, 759 F.3d 343, 347, 352–53 (4th Cir. 2014) (quotation omitted); see Clatterbuck v. City of Charlottesville, 708 F.3d 549, 557 (4th Cir. 2013), abrogated on other grounds by Reed v. Town of Gilbert, 576 U.S. 155 (2015); Burbach Broad. Co., 278 F.3d at 406. A court need not accept as true a complaint's legal conclusions, "unwarranted inferences,

3

unreasonable conclusions, or arguments." Giarratano, 521 F.3d at 302 (quotation omitted); see Iqbal, 556 U.S. at 678–79. Rather, a plaintiff's allegations must "nudge[ ] [his] claims," Twombly, 550 U.S. at 570, beyond the realm of "mere possibility" into "plausibility." Iqbal, 556 U.S. at 678–79.

MediaStratX moves for judgment on the pleadings and contends that (1) the court lacks subject-matter jurisdiction; (2) Fischman's second and third claims fail because Fischman does not have a private right of action under 47 C.F.R. § 64.1200(d); and (3) Fischman's second and third claims fail because Fischman does not plausibly allege a violation of 47 C.F.R. § 64.1200(d). See [D.E. 12] 9–14; [D.E. 17] 3–10. Fischman disagrees. See [D.E. 16].

A.

MediaStratX contends that the court lacks subject-matter jurisdiction over Fischman's claims. The court construes MediaStratX's motion as one to dismiss for lack of subject-matter jurisdiction under Rule 12(b)(1). See Fed. R. Civ. P. 12(b)(1), (h)(3); Sucampo Pharms., Inc. v. Astellas Pharma, Inc., 471 F.3d 544, 548–49 (4th Cir. 2006). A motion to dismiss under Rule 12(b)(1) for lack of standing tests subject-matter jurisdiction, which is the court's "statutory or constitutional power to adjudicate the case." Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 89 (1998) (emphasis omitted). A federal court "must determine that it has subject-matter jurisdiction over [a claim] before it can pass on the merits of that [claim]." Constantine v. Rectors & Visitors of George Mason Univ., 411 F.3d 474, 479–80 (4th Cir. 2005). When considering a Rule 12(b)(1) motion, the court "may consider evidence outside the pleadings without converting the proceeding into one for summary judgment." White Tail Park, Inc. v. Stroube, 413 F.3d 451, 459 (4th Cir. 2005) (quotation omitted); see Evans v. B.F. Perkins Co., 166 F.3d 642, 647 (4th Cir. 1999). A plaintiff must establish that this court has subject-matter jurisdiction over his claims. See, e.g., Steel Co., 523 U.S. at 103–04; Evans, 166 F.3d at 647; Richmond, Fredericksburg & Potomac R.R. v.

4

United States, 945 F.2d 765, 768 (4th Cir. 1991). However, "when a defendant asserts that the complaint fails to allege sufficient facts to support subject[-]matter jurisdiction, the . . . court must apply a standard patterned on Rule 12(b)(6) and assume the truthfulness of the facts alleged [in the complaint and any additional materials]." Kerns v. United States, 585 F.3d 187, 193 (4th Cir. 2009).

If a plaintiff does not have standing, the court does not have subject-matter jurisdiction to hear the plaintiff's claims. See, e.g., Lujan v. Defs. of Wildlife, 504 U.S. 555, 560–61 (1992); Stroube, 413 F.3d at 459; Payne v. Sears, Roebuck & Co., No. 5:11-CV-614-D, 2012 WL 1965389, at *2–3 (E.D.N.C. May 31, 2012) (unpublished). A plaintiff establishes standing by showing: (1) that the plaintiff has "suffered an injury in fact—an invasion of a legally-protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical"; (2) "a causal connection between the injury and the conduct complained of—the injury has to be fairly traceable to the challenged action of the defendant, and not . . . the result of the independent action of some third party not before the court"; and (3) that it is "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision" from the court. Chambers Med. Techs. of S.C., Inc. v. Bryant, 52 F.3d 1252, 1265 (4th Cir. 1995) (alterations omitted) (quoting Lujan, 504 U.S. at 560–61); see TransUnion LLC v. Ramirez, 141 S. Ct. 2190, 2203 (2021); Spokeo, Inc. v. Robins, 136 S. Ct. 1540, 1547 (2016). These requirements are "the irreducible constitutional minimum of standing." Lujan, 504 U.S. at 560; see TransUnion, 141 S. Ct. at 2204–07; Spokeo, Inc., 136 S. Ct. at 1547.

A defendant can mount either a facial or a factual attack upon standing. See Hutton v. Nat'l Bd. of Exam'rs in Optometry, Inc., 892 F.3d 613, 620–21 (4th Cir. 2018); Kerns, 585 F.3d at 192; Adams v. Bain, 697 F.2d 1213, 1219 (4th Cir. 1982). A facial attack asserts that a complaint fails to allege facts upon which to base subject-matter jurisdiction. See Hutton, 892 F.3d at 621 n.7;

5

Adams, 697 F.2d at 1219.[1] When a defendant makes a facial challenge to subject-matter jurisdiction, the court takes the factual allegations of the complaint as true. See Beck v. McDonald, 848 F.3d 262, 270 (4th Cir. 2017); Kerns, 585 F.3d at 192; Adams, 697 F.2d at 1219.

In evaluating a class action complaint, the Fourth Circuit analyzes "standing based on the allegations of personal injury made by the named plaintiffs." Hutton, 892 F.3d at 620 (quotation omitted); see TransUnion, 141 S. Ct. at 2208; Beck, 848 F.3d at 269; Doe v. Obama, 631 F.3d 157, 160 (4th Cir. 2011). Thus, if Fischman lacks standing, this court lacks subject-matter jurisdiction.

MediaStratX facially attacks Fischman's standing and argues that he has not pleaded a concrete injury. See [D.E. 12] 9–10; [D.E. 17] 3–6. Generally, under Article III, a harm is concrete where the "alleged injury to the plaintiff has a close relationship to a harm traditionally recognized as providing a basis for a lawsuit in American courts," such as "physical harms and monetary harms." TransUnion, 141 S. Ct. at 2204; see Spokeo, 136 S. Ct. 1547–48. Various "intangible harms," such as "reputational harms, disclosure of private information, and intrusion upon seclusion" also can be concrete harms. TransUnion, 141 S. Ct. at 2204; Spokeo, 136 S. Ct. at 1549; Meese v. Keene, 481 U.S. 465, 473 (1987). Although courts may not "treat an injury as concrete for Article III purposes based only on Congress's say-so," Congress's decision to impose a statutory prohibition or obligation on a defendant "and to grant a plaintiff a cause of action to sue over the defendant's violation of that statutory prohibition" is instructive "in determining whether a harm is sufficiently concrete to qualify as an injury in fact." TransUnion, 141 S. Ct. at 2204.

The TCPA "recognizes a cognizable constitutional injury" due to an intrusion upon a subscriber's privacy rights by unsolicited telemarketer calls. Krakauer v. Dish Network, L.L.C., 925

---

[1] In a factual challenge, "the defendant maintains that the jurisdictional allegations of the complaint are not true." Hutton, 892 F.3d at 621 n.7.

6

F.3d 643, 652–53 (4th Cir. 2019); see 47 U.S.C. § 227(c)(5) (providing a private right of action to protect a telephone subscriber's privacy rights from unsolicited intrusion by telemarketers); see TransUnion, 141 S. Ct. at 2204 (explaining that an "intrusion upon seclusion" is a concrete injury). Such an injury is not "ethereal or abstract." Krakauer, 925 F.3d at 653. Moreover, Congress's creation of a private right of action in section 227(c)(5) for telemarketers' violations of regulations promulgated under section 227(c) buttresses this conclusion. See, e.g., TransUnion, 141 S. Ct. at 2204–05. Accordingly, if Fischman has plausibly alleged that he "received unwanted calls on multiple occasions[,]" and that "[t]hese calls [were made] to [Fischman's] residential number listed on the Do-Not-Call registry[,]" then Fischman has plausibly alleged a concrete injury under Article III. See id.; Krakauer, 925 F.3d at 653; 47 U.S.C. § 227(c)(5).

Construing the pleadings in a light most favorable to Fischman, Fischman has alleged a concrete injury. In 2004, Fischman registered his cell phone number with the Do-Not-Call registry. See Compl. ¶ 32. Since 2018, Fischman has received over 25 unsolicited telemarketing calls from multiple numbers about purchasing an extended warranty for his vehicle. See id. ¶¶ 34–45. When he first started receiving the calls, Fischman told the callers that he did not wish to receive any more unsolicited calls. See id. ¶ 35. Fischman repeatedly attempted to return the unsolicited calls to the numbers that dialed him but many were out of service. See id. ¶ 36. On January 10, 2019, Fischman again received an unsolicited call about purchasing an extended vehicle warranty, which he returned and determined that the number was associated with MediaStratX. See id. ¶¶ 37–40. Although Rameson, a MediaStratX principal, declares that "MediaStratX has no records of calling [Fischman] prior to January 10, 2019[,]" this statement comports with MediaStratX simply failing to keep records of its calls to Fischman. [D.E. 12-1] ¶ 6. Even considering evidence outside the pleadings, Fischman has plausibly alleged that he received unwanted calls from MediaStratX on multiple

7

occasions despite having placed his number on the Do-Not-Call registry. See Compl. ¶¶ 34–46. Thus, Fischman has plausibly alleged a cognizable constitutional injury sufficient to support Article III standing. See TransUnion, 141 S. Ct. at 2204–07; Krakauer, 925 F.3d at 652–53. Accordingly, the court denies MediaStratX's motion to dismiss for lack of subject-matter jurisdiction.

B.

MediaStratX seeks judgment on the pleadings on Fischman's second and third claims and argues that there is no private right of action for alleged violations of 47 C.F.R. § 64.1200(d). See [D.E. 12] 10–12. Congress must create "private rights of action, explicit or implicit, to enforce federal laws." In re Miller, 124 F. App'x 152, 154 (4th Cir. 2005) (per curiam) (unpublished); see Alexander v. Sandoval, 532 U.S. 275, 286–87 (2001); United States v. Santos-Portillo, 997 F.3d 159, 164–65 (4th Cir. 2021); Carey v. Throwe, 957 F.3d 468, 479 (4th Cir. 2020). If Congress does not create a private right of action, "a cause of action does not exist and courts may not create one, no matter how desirable that might be as a policy matter, or how compatible with the statute." Sandoval, 532 U.S. at 286–87; see Planned Parenthood S. Atl. v. Baker, 941 F.3d 687, 695 (4th Cir. 2019). Moreover, "[t]he express provision of one method of enforcing a substantive rule suggests that Congress intended to preclude others." Sandoval, 532 U.S. at 290; see In re Miller, 124 F. App'x at 155.

Congress explicitly created a private right of action for regulations promulgated under section 227(c). See 47 U.S.C. § 227(c)(5)(A) ("A person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may . . . [bring] an action based on a violation of the regulations prescribed under this subsection . . . ."); Krakauer, 925 F.3d at 653. Congress did not, however, explicitly or implicitly create a private right of action for regulations promulgated under section

8

227(d). See 47 U.S.C. § 227(d); Wilson v. PL Phase One Operations L.P., 422 F. Supp. 3d 971, 982 (D. Md. 2019).

Fischman's second and third claims allege violations of 47 C.F.R. § 64.1200(d). See Compl. ¶¶ 62–70. The Federal Communications Commission ("FCC") promulgated section 64.1200(d). Section 64.1200(d) requires telemarketers to implement "procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity." 47 C.F.R. § 64.1200(d). The FCC did not state under which subsection of 47 U.S.C. § 227 it promulgated 47 C.F.R. § 64.1200(d). Accordingly, this court must determine whether the FCC promulgated section 64.1200(d) under 47 U.S.C. § 227(c) or § 227(d) to determine if Fischman has a private right of action.

Section 64.1200(d) includes procedures related to protecting the privacy rights of residential telephone subscribers. See id. (requiring telemarketers, inter alia, to maintain internal do-not-call lists and to implement policies and training programs designed to enforce those internal do-not-call lists). These procedures correspond with section 227(c)'s plain text, which provides for the creation of rules designed to "implement [] methods and procedures[,]" such as "electronic databases . . . company-specific 'do-not-call' systems, and any other alternatives," that protect residential telephone subscribers' privacy rights. 47 U.S.C. §§ 227(c)(1)(A), (E). Accordingly, several courts have held that the FCC promulgated section 1200(d) under 47 U.S.C. § 227(c) and, therefore, that plaintiffs have a private right of action for violations of section 1200(d). See Cordoba v. DIRECTV, LLC, 942 F.3d 1259, 1265 (11th Cir. 2019); Charvat v. NMP, LLC, 656 F.3d 440, 443–44 (6th Cir. 2011); Rosenberg v. LoanDepot LLC, 435 F. Supp. 3d 308, 324–25 (D. Mass. 2020); Cunningham v. Rapid Response Monitoring Servs., Inc., 251 F. Supp. 3d 1187, 1200 (M.D. Tenn. 2017); Wagner v. CLC Resorts & Devs., Inc., 32 F. Supp. 3d 1193, 1198 (M.D. Fla. 2014).

9

Other courts have held that the FCC promulgated section 64.1200(d) under 47 U.S.C. § 227(d) and, therefore, that no private right of action exists for violating section 64.1200(d). See Worsham v. Disc. Power, Inc., No. RDB-20-0008, 2021 WL 50922, at *4 (D. Md. Jan. 6, 2021) (unpublished); Wilson, 422 F. Supp. 3d at 982; Braver v. NorthStar Alarm Servs., LLC, No. CIV-17-0383, 2019 WL 3208651, at *15 (W.D. Okla. July 16, 2019) (unpublished); Worsham v. Travel Options, Inc., No. JKB-14-2749, 2016 WL 4592373, at *3 (D. Md. Sept. 2, 2016) (unpublished), aff'd on other grounds, 678 F. App'x 165 (4th Cir. 2017) (per curiam) (unpublished); Burdge v. Ass'n Health Care Mgmt., Inc., No. 1:10-CV-00100, 2011 WL 379159, at *4 (S.D. Ohio Feb. 2, 2011) (unpublished). These courts, inter alia, relied on 47 U.S.C. § 227(d)'s title, "Technical and procedural standards," and concluded that because section 64.1200(d) contains procedural standards, the FCC promulgated the rule under 47 U.S.C. § 227(d). See Disc. Power, Inc., 2021 WL 50922, at *4; Wilson, 422 F. Supp. 3d. at 982; Braver, 2019 WL 3208651, at *15; Travel Options, Inc., 2016 WL 4592373, at *4. Additionally, the Burdge court cited in support of its conclusion that the FCC promulgated section 64.1200(d) under 47 U.S.C. § 227(d) a 1992 FCC report where the FCC stated that it adopted 47 U.S.C. § 227(d)'s requirement that artificial or prerecorded telephone messages delivered by an autodialer clearly state the caller's identity, telephone number, and address in section 64.1200(d). See Burdge, 2011 WL 379159, at *4.

After considering these divergent views, the court agrees with those courts holding that the FCC promulgated the relevant provisions of section 64.1200(d) under 47 U.S.C. § 227(c). The plain text of the procedures described in section 64.1200(d) corresponds with 47 U.S.C. § 227(c)'s requirements that the FCC promulgate rules to protect residential telephone subscribers' privacy rights. See, e.g., Rosenberg, 435 F. Supp. 3d at 324–25. Section 227(d)'s plain text, on the other hand, concerns standards governing "telephone facsimile machine[s,]" "automatic telephone dialing

10

system[s,]" and other automated telemarketing devices. 47 U.S.C. § 227(d).[2]

---

[2] Section 227(d) states:

Technical and procedural standards

(1) Prohibition

It shall be unlawful for any person within the United States--

(A) to initiate any communication using a telephone facsimile machine, or to make any telephone call using any automatic telephone dialing system, that does not comply with the technical and procedural standards prescribed under this subsection, or to use any telephone facsimile machine or automatic telephone dialing system in a manner that does not comply with such standards; or

(B) to use a computer or other electronic device to send any message via a telephone facsimile machine unless such person clearly marks, in a margin at the top or bottom of each transmitted page of the message or on the first page of the transmission, the date and time it is sent and an identification of the business, other entity, or individual sending the message and the telephone number of the sending machine or of such business, other entity, or individual.

(2) Telephone facsimile machines

The Commission shall revise the regulations setting technical and procedural standards for telephone facsimile machines to require that any such machine which is manufactured after one year after December 20, 1991, clearly marks, in a margin at the top or bottom of each transmitted page or on the first page of each transmission, the date and time sent, an identification of the business, other entity, or individual sending the message, and the telephone number of the sending machine or of such business, other entity, or individual.

(3) Artificial or prerecorded voice systems

The Commission shall prescribe technical and procedural standards for systems that are used to transmit any artificial or prerecorded voice message via telephone. Such standards shall require that--

(A) all artificial or prerecorded telephone messages (i) shall, at the beginning of the message, state clearly the identity of the business, individual, or other entity initiating the call, and (ii) shall, during or after the message, state clearly the telephone number or address of such business, other entity, or individual; and

11

Additionally, in contrast to the text of section 227(d), the text of 47 U.S.C. § 227(c) directs the FCC to, inter alia, "develop proposed regulations to implement the methods and procedures that the Commission determines are most effective and efficient to accomplish the purposes of this section." Id. § 227(c)(1)(E). Thus, the text of 47 U.S.C. §§ 227(c)(1)(E) and (d) supports the conclusion that the FCC promulgated 47 C.F.R. § 64.1200(d) under 47 U.S.C. § 227(c)(1)(E), not section 227(d).

As for the reasoning of the courts with contrary holdings, section 227(d)'s title indicates that it provides for "procedural standards," and the standards prescribed by 47 C.F.R. § 64.1200(d) are procedural. Nonetheless, "the title of a statute and the heading of a section cannot limit the plain meaning of the text." Brotherhood of R.R. Trainmen v. Balt. & O. R. Co., 331 U.S. 519, 528–29 (1947); United States v. Jordan, 952 F.3d 160, 173–74 (4th Cir. 2020); United States v. Hatcher, 560 F.3d 222, 226 (4th Cir. 2009). Additionally, even though the FCC stated in its 1992 report that it adopted one of 47 U.S.C. § 227(d)'s requirements in section 64.1200(d), this FCC statement is not determinative. After all, that statement only relates to one of 47 U.S.C. § 227's requirements that the FCC adopted in section 64.1200(d). Several of section 64.1200(d)'s other procedural standards, including those relevant in this case, directly relate to 47 U.S.C. § 227(c)'s plain text requiring the FCC to promulgate rules protecting residential telephone subscribers' privacy rights, indicating that the FCC also adopted those requirements in section 64.1200(d). Compare 47 U.S.C. § 227(c) with 47 C.F.R. § 64.1200(d); see Cunningham, 251 F. Supp. 3d at 1200–01. Thus, the court holds that the FCC promulgated the relevant provisions of section 64.1200(d) under 47 U.S.C. § 227(c).

> (B) any such system will automatically release the called party's line within 5 seconds of the time notification is transmitted to the system that the called party has hung up, to allow the called party's line to be used to make or receive other calls.

47 U.S.C. § 227(d).

12

Accordingly, Congress explicitly provided a private cause of action for Fischman's second and third claims, and the court denies MediaStratX's motion for a judgment on the pleadings.

C.

Alternatively, MediaStratX argues that Fischman has failed to plausibly allege violations of 47 C.F.R. § 64.1200(d). See [D.E. 12] 12–14. Under Rule 12(b)(6), Fischman's allegations "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Iqbal, 556 U.S. at 678 (quotation omitted); see Twombly, 550 U.S. at 570; Giarratano, 521 F.3d at 302. A court need not accept as true a complaint's legal conclusions, "unwarranted inferences, unreasonable conclusions, or arguments." Giarratano, 521 F.3d at 302 (quotation omitted); see Iqbal, 556 U.S. at 678–79. Rather, a plaintiff's allegations must "nudge[ ] [his] claims," Twombly, 550 U.S. at 570, beyond the realm of "mere possibility" into "plausibility." Iqbal, 556 U.S. at 678–79.

Fischman's second and third claims allege violations of 47 C.F.R. § 64.1200(d). See Compl. ¶¶ 62–70. Section 64.1200(d) provides:

> No person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive such calls made by or on behalf of that person or entity.

47 C.F.R. § 64.1200(d). Section 64.1200(d) then lists several "minimum standards" that these procedures must meet, including, inter alia, (1) providing a written policy for maintaining a do-not-call list (section 1200(d)(1)); (2) training personnel in the existence and use of the do-not-call list (section 1200(d)(2)); (3) ensuring methods are in place for recording a subscriber's request to not be contacted and ensuring that request is honored in not more than 30 days (section 1200(d)(3)); and

13

(4) maintaining subscribers on the do-not-call list for a minimum of five years (section 1200(d)(6)). See id.

Construing the pleadings in a light most favorable to Fischman, Fischman told MediaStratX to stop calling him in late 2018, but MediaStratX continued to call him through January 30, 2019. See Compl. ¶¶ 34–43. Fischman also alleges that he received over 25 calls during this time period. See id. ¶ 45. In his second and third claims, Fischman argues that these facts demonstrate that MediaStratX violated 47 C.F.R. § 64.1200(d) by failing to institute procedures meeting the rule's "minimum standards." See Compl. ¶¶ 62–70. Essentially, Fischman contends that because he received numerous calls from MediaStratX more than 30 days after he told MediaStratX that he no longer wished to receive calls, MediaStratX failed to implement procedures, such as written policies, personnel training, and maintenance of an internal do-not-call list, that meet the regulations' requirements. Drawing all reasonable inferences in Fischman's favor, Fischman plausibly contends that MediaStratX's repeated attempts to call him indicate that MediaStratX did not implement the procedures outlined in 47 C.F.R. § 64.1200(d), including maintaining an internal do-not-call list. Specifically, had MediaStratX had a written policy for maintaining a do-not-call list, trained its personnel in using the do-not-call list, or actually maintained an internal do-not-call list, Fischman would not have continued to receive numerous calls from MediaStratX more than 30 days after he requested that MediaStratX cease calling him. Cf. 47 C.F.R. § 64.1200(d).[3] Accordingly, Fischman has plausibly alleged a violation of section 64.1200(d), and the court denies MediaStratX's motion

---

[3] MediaStratX argues that it did not violate 47 C.F.R. § 64.1200(d)(3) because its records indicate that it did not call Fischman more than 30 days after he told them to stop calling him on January 10, 2019. See [D.E. 12] 12–14. Fischman, however, alleges that he told MediaStratX agents to stop calling him in late 2018, but MediaStratX's calls continued until January 30, 2019. See Compl. ¶¶ 34–43; cf. 47 C.F.R. § 64.1200(d)(3). Thus, construing the pleadings in a light most favorable to Fischman, Fischman plausibly alleges a violation.

14

for judgment on the pleadings. See, e.g., Iqbal, 556 U.S. at 678; Twombly, 550 U.S. at 570; Giarratano, 521 F.3d at 302.

III.

In sum, the court DENIES MediaStratX's motion for judgment on the pleadings [D.E. 11].

SO ORDERED. This _10_ day of August 2021.

*J. Dever*
JAMES C. DEVER III
United States District Judge

15

Case 2:20-cv-00083-D   Document 18   Filed 08/10/21   Page 15 of 15